IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARY GULLICKSON,<br>          Plaintiff,<br><br>vs.<br><br>VILLAGE DISCOUNT OUTLET, INC.:<br>MAYO, INCORPORATED;.PLAZA MARKETING<br>ASSOCIATES;  JAMES BURT<br>STINNETT; LEONARD BAUMGARTNER;<br>WILLIAM  RYAN; and REGINALD WRIGHT,<br>          Defendants. | FILED: JUNE 30, 2008<br>CASE NO. 08CV3731<br>JUDGE ST. EVE<br>MAGISTRATE JUDGE DENLOW<br>TG<br><br>**JURY DEMANDED** |

## COMPLAINT

Plaintiff GARY GULLICKSON by and through his counsel, Atty. Edward Voci, complains against the Defendant as follows:

### JURISDICTION

1. This Complaint is brought pursuant to 42 USC 1981 as amended, 42 USC 1985, the Civil Rights Attorney's Fee's Awards Act of 1976, 42 U.S.C. § 1988. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 (federal question), 1332(a)(1)(diversity), 1343(civil rights) and this Court's supplemental jurisdiction pursuant to 28 U.S.C § 1367(c)(3) over Illinois state law claims for retaliatory discharge and conspiracy. Plaintiff resides in the State of Montana and no other party resides in the State of Montana. The amount in controversy exceeds $75,000 exclusive of interest and costs.

### PARTIES

2. Plaintiff GARY GULLICKSON is a citizen of the United States of America, who resides within the State of Montana.

3.  Defendant VILLAGE DISCOUNT OUTLET, INC. ["VDO"] is an for-profit corporation with its principal place of business and doing business within this District and Division.

4.  Defendant JAMES STINNETT is a resident of Illinois and is a VDO corporate officer VDO.

5.  Defendant MAYO INCORPORATED ["MAYO"] is an Illinois for profit corporation with its principal place of business in this District and Division.

5A.  Defendant PLAZA MARKETING ASSOCIATES ["PLAZA"] is an Illinois for profit corporation with its principal place of business in this District and Division

6.  Defendant REGINALD WRIGHT regularly conducts business this District and Division and is a corporate officer of MAYO INCORPORATED and of PLAZA MARKETING ASSOCIATES.

7.  Defendant WILLIAM RYAN regularly conducts business in this District and Division and a corporate officer of MAYO INCORPORATED and of PLAZA MARKETING ASSOCIATES.

8.  Defendant LEONARD BAUMGARTNER is a resident of this District and Division and a corporate officer of Amvets.

### FACTS

9.  Plaintiff was hired by one, or in the alternative, by one or more of the Defendants on or about December 29, 2000 to perform human resource services and then in March, 2002 as

"Plaza Site Coordinator".[1]  As Plaza Site Coordinator he established relationships with businesses and municipalities for the purpose of gaining permission to set up parked trailers to which the donating public could deposit household which VDO would transport and sell at its retail stores or sell in gross shipments overseas from its warehouse.

10.  The Defendants was initially paid $3000 plus bonus and expenses and then in February 2003 was paid a base salary of $5000 per month and plus bonus.

11.  Plaintiff worked for one or, in the alternative, for one or more of the Defendants until on or about July 10, 2006.  Plaintiff was and is well qualified for the job he held and performed while employed by one or, in the alternative, one or more of the Defendants.

12.  The business operations of the Defendants centered around an Illinois not-for-profit corporation, Illinois Amvets Service Foundation ["Amvets"]. and the Juvenile Diabetic Research Foundation ["JDRF"].  Amvets is a longstanding and well known charitable organization that provides a wide range of services to military veterans.  JDRF, as the name implies, raises funds to support research for the cause, treatment and cure for diabetes in young people.  The Defendants (with the exception of BAUMGARTNER who is an Amvets officer holder;  and he is excepted from allegations in this Complaint relating to JDRF) cloaked themselves with the names, reputation and image of Amvets and JDRF and held themselves out to be Amvets and JDRF when they sought donations of household items at drop-off sites in parking lots and through

---

[1] Plaintiff's allegations in the alternative and his instant lack of certainty with respect to who employed and who terminated him stems from a) the peculiar relationship among the Defendants as alleged herein (see ¶12 in particular); b) Plaintiff's lack of knowledge with respect to his base compensation which was wire transfered to his bank account from origins unknown to him and c) on June 25, 2008 Plaintiff was asked in a deposition by an attorney for VDO if it were true that he, Gary Gullickson, was hired and paid "personally by James Stinnett" and not by VDO.  Up to that point in the deposition Gullickson had testified that he had been employed by VDO.  He also testified that he received his base pay regularly by wire transfer but did not know the origin of the funds.

curbside pickups at residences. MAYO and PLAZA also handled telephone inqueries with respect to the trailer sites and answered such telephone calls as "Amvets" or "Juvenile Diabetes Research Foundation" respectively. The Defendants (excluding Defendant LEONARD BAUMGARTNER) operated and functioned in close coordination with lines of authority often blurred such that the Defendants appeared as one organizational entity.

13. The Defendants stated publicly to donors and members of Amvets and JDRF that, of the money generated from donations, 70% went to Amvets and JDRF and 30% went to overhead. When making these statements the Defendants knew full well that the actual amounts of money that went to Amvets was less than 5% of the revenue generated and that the vast remainder, i.e. over 95% went to Defendants for "overhead" that includes lucrative contracts to their intimates, six-figure salaries and six figure bonuses. For example, for each multi-wheel trailer that was filled with donated household goods for Amvets, Amvets received $200; for each multi-wheel trailer filled for JDRF, JDRF received $300; however, each trailer of household goods sold at VDO retail stores generated an average of $4,000.

14. Defendants MAYO, PLAZA, RYAN and WRIGHT used tele-marketing to market curbside pickups for Amvets and JDRF which received a maximum of $4.30 for each curbside pickup regardless of the quantity of items or quality of items involved with each pickup. VDO paid the $4.30 to MAYO and PLAZA, each which deducted its respective fee and tendered something than $4.30 to Amvets and JDRF.

15. According to its agreement with Amvets, VDO was supposed to pay additional money to Amvets based on sales that exceeded certain limits as reflected by sales tax returns, but

Defendant BAUMGARTNER never requested VDO's sales tax returns and Defendant VDO and STINNETT have never provided the sales tax returns to Amvets and like with JDRF. In 2005, VDO had revenues exceeding $30 million from their retail stores and overseas shipments from its warehouse.

16. The Defendants' (excepting Defendant LEONARD BAUMGARTNER) use of Amvets and JDRF as front organizations and in falsely providing information to the public as to the split in revenues was illegal within the meaning of the enforcement action brought by the Illinois Attorney General in *Illinois v. Telemarketing Associations*, 560 U.S. 600 (2003).

17. Defendants VDO and STINNETT also discriminated against a Mexican-American employee as alleged in *Villanueva v. Discount Village Outlets,* 07 cv 4626 currently pending in this District.

18. Plaintiff complained to Defendants and to other of their supervisory personnel about the racially discriminatory conduct committed against Villanueva and also spoke in support of her claims of discrimination at meetings and in conservations with other of their operations' supervisory personnel.

19. The Defendants terminated or caused to terminate Plaintiff's employment intentionally, maliciously or with willful and wonton neglect of Plaintiff's rights because of, and in retaliation for, the following actions which Plaintiff took:

A. Plaintiff complained about the Defendants' illegal conduct to the Defendants and to other supervisory personnel in the Defendants' operations.

B. Plaintiff complained about the Defendants' illegal conduct to the Office of the Illinois Attorney General

C. Plaintiff complained to the Defendants about the racially discriminatory treatment by Defendants VDO and STINNETT of VDO employee, Gloria Villanueva as alleged in her lawsuit against VDO in case 07 cv 4626, currently pending in this District.

D. Plaintiff spoke to Defendants and other of their supervisory personnel in support of Villanueva's allegations of racial discrimination as alleged by her lawsuit referred to above

20. The individual Defendants STINNETT, BAUMGARTNER, RYAN and WRIGHT, acted in concert and outside the scope of their employment by sharing among themselves information about Plaintiff's complaining about the Defendants' discriminatory conduct toward Villanueva and his speaking in support of her, and how to punish him for same; by discussing and strategizing among themselves about how to stop Plaintiff's complaining about the Defendants' discriminatory conduct toward Villanueva and his speaking in support of her, and how to punish him for same; by jointly determining that Plaintiff's employment should be terminated as a means of stopping Plaintiff's complaining about the Defendants' discriminatory conduct toward Villanueva and his speaking in support of her, and to punish him for same; and by terminating his employment as a means of stopping Plaintiff's complaining about the Defendants' discriminatory conduct toward Villanueva and his speaking in support of her, and to punish him for same.

21. The individual Defendants STINNETT, BAUMBARTNER, RYAN and WRIGHT, acted in concert and outside the scope of their employment by sharing among themselves infor-

mation about Plaintiff's complaining of the Defendants' illegal conduct, and how to punish him for same; by discussing and strategizing among themselves about how to stop Plaintiff's complaining about illegal conduct, and how to punish him for same; by jointly determining that Plaintiff's employment should be terminated as a means of stopping his complaining about illegal conduct and to punish him for same; and by terminating his employment as a means of stopping Plaintiffs' complaining about illegal conduct, and to punish him for same.

22. The State of Illinois has a public policy that protects employees from retaliation by employers when employees speak against illegal conduct to their employers or to public officials such as the office of the Illinois Attorney General.

23. Defendants in carrying out all of the retaliatory acts alleged herein also refused to pay Plaintiff the bonuses to which he was entitled to pursuant to the agreements entered into by Plaintiff and Defendants.

24. Said refusal by Defendants to pay Plaintiff the bonuses to which he was entitled also constituted a discrete breach of the written and verbal agreements entered into by Plaintiff and Defendants, which bonuses amounted to more than $75,000 excluding interest and costs.

### FIRST CLAIM: RETALIATORY DISCHARGE PURSUANT TO 42 US 1981 AS AMENDED

25. The Defendants violated 42 USC 1981 as Amended by terminating Plaintiff's employment in retaliation for Plaintiff's having complained to them about the racial discrimination against Gloria Villanueva and having spoken to them in support of her allegations of racial discrimination, as alleged above.

### SECOND CLAIM: CONSPIRACY UNDER 42 USC 1985(3)

26. The Defendants STINNETT, BAUMGARTNER, RYAN and WRIGHT violated 42 USC 1985(3) by acting jointly and outside the scope of their employment to deprive Plaintiff of his . right under 42 USC 1981 as Amended to be free of retaliatory termination of his employment because he complained to them and others about the racial discrimination against Gloria Villanueva and spoke in support of her allegations of racial discrimination to Defendants and other of their supervisory personnel, as alleged above.

### THIRD CLAIM: ILLINOIS COMMON LAW RETALIATORY DISCHARGE

27. Defendants violated the common law protection against retaliatory discharge as enunciated in *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 529, 478 N.E.2d 1354 (1985). and its progeny. by terminating Plaintiff's employment because Plaintiff complained about Defendants' illegal conduct to Defendants, to other supervisory personnel in the Defendants' chains of command, and to the Office of the Illinois Attorney General, as alleged above.

### FOURTH CLAIM: ILLINOIS COMMON LAW CONSPIRACY

28. Defendants STINNETT, BAUMGARTNER, RYAN and WRIGHT violated the Illinois common law prohibition against conspiracy by acting jointly, in concert and outside the scope of their employment to deprive Plaintiff of his right to be free of retaliatory termination of employment because he complained to Defendants, their supervisory personnel and to the Illinois Attorney General's office about the Defendants' illegal conduct, as alleged above.

### FIFTH CLAIM: BREACH OF CONTRACT

29. Defendants breached their verbal and written agreements to pay Plaintiff bonuses exceeding $75,000 exclusive of interest and costs.

### *RELIEF*

30. Defendants actions as alleged herein directly and proximately caused Plaintiff to suffer economic injury, emotional injury and mental injury. Accordingly, Plaintiff requests compensatory economic damages including back pay, pre-judgment interest, lost benefits, reinstatement or front-pay; emotional injury damages; mental injury damages; punitive damages; attorney fees; and costs.

Dated: June 30, 2008

s/Edward Voci

_____

Atty. Edward Voci
1111 South Blvd.
Oak Park IL 60302
Tel. 312.287.8624
Fax. 708.366.8624
email: evoci@mac.com