IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Gary Gullickson, | 08 C 3731 |
| Plaintiff, | |
| | Judge Amy St. Eve |
| v. | |
| | Magistrate Judge Denlow |
| Village Discount Outlet, Inc.; Mayo, Incorporated; Plaza Marketing Associates; James Burt Stinnett; Leonard Baumgartner; William Ryan and Reginald Wright, | |
| Defendants | |

### ANSWER TO COMPLAINT

Now Comes, the Defendant, Village Discount Outlet, Inc., by and through its attorneys, Anthony S. Graefe and Mark Hansen of Graefe & Hansen, Ltd., and in answer to Plaintiff's Complaint states as follows:

1.    This Complaint is brought pursuant to 42 USC (sic.) 1981 as amended, 42 USC 1985, the Civil Rights Attorney's Fee's (sic.) Awards Act of 1976, 42 U.S.C. §1988. Jurisdiction is invoked pursuant to 28 US..C. §§1331 (federal question), 1332(a)(1)(diversity), 1343 (civil rights) and this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367(c)(3) over Illinois state law claims for retaliatory discharge and conspiracy. Plaintiff resides in the State of Montana and no other party resides in the State of Montana. The amount in controversy exceeds $75,000 exclusive of interest and costs.

**ANSWER:**    Defendant admits that this Court has jurisdiction over this matter but denies liability under any of the laws referenced in Paragraph 1, admits to Plaintiff's residence, but is without knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 1 as to the amount in controversy.

2.    Plaintiff GARY GULLICKSON is a citizen of the United States of America, who resides within the State of Montana.

**ANSWER:**        Defendant admits.

3.    Defendant VILLAGE DISCOUNT OUTLET, INC. ["VDO"] as an (sic.) for-profit corporation with its principal place of business and doing business within this District and Division.

**ANSWER:**        Defendant admits.

4.    Defendant JAMES STINNETT is a resident of Illinois and is a VDO corporate officer VDO. (sic.)

**ANSWER:**        Defendant admits that he one of its corporate officers and maintains a residence in Illinois.

5.    Defendant MAYO INCORPORATED ["MAYO"] is an Illinois for profit corporation with its principal place of business in this District and Division.

**ANSWER:**        Defendant admits.

6.    Defendant REGINALD WRIGHT regularly conducts business (sic.) this District and Division and is a corporate officer of MAYO INCORPORATED and of PLAZA MARKETING ASSOCIATES.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 6.

7.    Defendant WILLIAM RYAN regularly conducts business in this District and Division and a (sic.) corporate officer of MAYO INCORPORATED and of PLAZA MARKETING ASSOCIATES.

2

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 7.

8.     Defendant LEONARD BAUMGARTNER is a resident of this District and Division and a (sic.) corporate officer of Amvets.

**ANSWER:**     Defendant admits Len Baumgartner is the Executive Director of Illinois Amvets Service Foundation and is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in Paragraph 8.

9.     Plaintiff was hired by one, or in the alternative, by one or more of the Defendants on or about December 29, 2000 to perform human resource services and then in March, 2002 as "Plaza Site Coordinator". As Plaza Site Coordinator he established relationships with businesses and municipalities for the purpose of gaining permission to set up parked trailers to which the donating public could deposit household (sic.) which VDO would transport and sell at its retail stores or sell in gross shipments overseas from its warehouse.

**ANSWER:**     Defendant admits it employed Plaintiff to perform human resources service, until he was terminated from that position for engaging in harassing conduct of certain staff personnel.  Defendant admits that in or around March 2002 Plaintiff began to perform functions related to developing plaza sites where the public could donate goods, which would then be sold at Defendants retail stores or in bulk to various dealers. Defendant denies that it hired Plaintiff to perform such functions, that it maintained him on its payroll, or that it had authority to discipline or discharge him, and further denies all remaining allegations set forth in Paragraph 9.

10.     The Defendants was (sic.) initially paid $3000 plus bonus and expenses and then in February 2003 was paid a base salary of $5000 per month and plus bonus.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in Paragraph 10.

11.   Plaintiff worked for one or, in the alternative, for one or more of the Defendants until on or about July 10, 2006. Plaintiff was and is well qualified for the job he held and performed while employed by one or, in the alternative, one or more of the Defendants.

**ANSWER:**     Defendant admits that Plaintiff was removed from his role as described in Paragraph 9, and denies all remaining allegations set forth in Paragraph 11.

12.   The business operations of the Defendants centered around an Illinois not-for-profit corporation, Illinois Amvets Service Foundation ["Amvets"]. (sic.) and the Juvenile Diabetic Research Foundation ["JDRF"]. Amvets is a longstanding and well known charitable organization that provides a wide range of services to military veterans. JDRF, as the name implies, raises funds to support research for the cause, treatment and cure of diabetes in young people. The Defendants (with the exception of BAUMGARTNER who is an Amvets officer (sic.) holder; and he is excepted from allegations in this Complaint relating to JDRF) cloaked themselves with the names reputation and image of Amvets and JDRF and held themselves out to be Amvets and JDRF when they sought donations of household items at drop-off sites in parking lots and through curbside pickups at residences. MAYO and PLAZA also handled telephone inqueries (sic.) with respect to the trailer sites and answered such telephone calls as "Amvets": or "Juvenile Diabetes Research Foundation" respectively. The Defendants (excluding Defendant LEONARD BAUMGARTNER) operated and functioned in close coordination with lines of authority often blurred such that the Defendants appeared as one organizational entity.

**ANSWER:**     Defendant admits that Illinois Amvets Service Foundation and the Juvenile Diabetic Research Foundation are charitable organizations providing various services for veterans

and services related to the cure for diabetes, but denies the remaining allegations, except that it

is without knowledge or information sufficient to form a belief as to the truth of the remaining

averments contained in Paragraph 12 with regard to the operations of Mayo and Plaza.

13.    The Defendants stated publicly to donors and members of Amvets and JDRF that, of

the money generated from donations, 70% went to Amvets and JDRF and 30% went to overhead.

When making these statements the Defendants knew full well that the actual amounts of money

that went to Amvets was less than 5% of the revenue generated and that the vast remainder, i.e.

over 95% went to Defendants for "overhead" that includes lucrative contracts to their intimates,

six-figure salaries and six figure bonuses. For example, each multi-wheel trailer that was filled

for JDRF, JDRF received $300; however, each trailer of household goods sold at VDO retail

stores generated an average of $4,000.

ANSWER:  Defendant denies.

14.    Defendants MAYO, PLAZA, RYAN and WRIGHT used tele-marketing to market

curbside pickups for Amvets and JDRF which received a maximum of $4.30 for each curbside

pickup regardless of the quantity of items or quality of items involved with each pickup. VDO paid

the $4.30 to MAYO and PLAZA, each which deducted its respective fee and tendered something

than (sic.) $4.30 to Amvets and JDRF.

ANSWER:        Defendant denies that it paid $4.30 to Mayo and Plaza, and is without

knowledge or information sufficient to form a belief as to the truth of the remaining averments

contained in Paragraph 14.

15.    According to its agreement with Amvets, VDO was supposed to pay additional money

to Amvets based on sales that exceeded certain limits as reflected by sales tax returns, but

Defendant BAUMGARTNER never requested VDO's sales tax returns and Defendant VDO and

STINNETT have never provided the sales tax returns to Amvets and like with JDRF. In 2005, VDO had revenues exceeding $30 million from their retail stores and overseas shipments from its warehouse.

ANSWER: Defendant denies.

16.   The Defendants' (excepting Defendant LEONARD BAUMGARTNER) use of Amvets and JDRF as front organizations and in falsely providing information to the public as to the split in revenues was illegal within the meaning of the enforcement action brought by the Illinois Attorney General in *Illinois v. Telemarketing Associations*, 560 U.S. 600 (2003).

ANSWER:        Defendant denies.

17.   Defendants VDO and STINNETT also discriminated against a Mexican-American employee as alleged in *Villanueva v. Discount Village Outlets*, (sic.) 07 CV 4626 currently pending in this District.

ANSWER:        Defendant admits that the case of *Villanueva v. Village Discount Outlet, Inc.,* 07 CV 4626 is currently pending in this District and denies the remaining allegations in Paragraph 17.

18.   Plaintiff complained to Defendants and to other of their supervisory personnel about the racially discriminatory conduct committed against Villanueva and also spoke in support of her claims of discrimination at meetings and in conversations with other of their operations' supervisory personnel.

ANSWER:        Defendant denies.

19.   The Defendants terminated or caused to terminate (sic.) Plaintiff's employment intentionally, maliciously or with willful and wonton neglect of Plaintiff's rights because of, and in retaliation for, the following actions which Plaintiff took:

a.    Plaintiff complained about the Defendants' illegal conduct to the Defendants and to other supervisory personnel in the Defendants' operations.

b.    Plaintiff complained about the Defendants' illegal conduct to the Office of the Attorney General.

c.    Plaintiff complained to the Defendants about the racially discriminatory treatment by Defendants VDO and STINNETT of VDO employee, Gloria Villanueva as alleged in her lawsuit against VDO in case 07 cv 4626, currently pending in this District.

d.    Plaintiff spoke to Defendants and other of their supervisory personnel in support of Villanueva's allegations of racial discrimination as alleged by her lawsuit referred to above.

ANSWER:        Defendant denies, except that it is without knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 14 as to whether Plaintiff complained about the Defendants' alleged illegal conduct to the Office of the Attorney General.

20.    The individuals Defendants STINNETT, BAUMGARTNER, RYAN and WRIGHT, acted in concert and outside the scope of their employment by sharing among themselves information about Plaintiff's complaining about the Defendants' discriminatory conduct toward Villanueva and his speaking in support of her, and how to punish him for same; by discussing and strategizing (sic.) among themselves about how to stop Plaintiff's complaining about the Defendants' discriminatory conduct toward Villanueva and his speaking in support of her, and how to punish him for same; by jointly determining that Plaintiff's employment should be terminated as a means of stopping Plaintiff's complaining about the Defendants' discriminatory conduct toward Villanueva and his speaking in support of her, and to punish him for same; and by

terminating his employment as a means of stopping Plaintiff's complaining about the Defendants' discriminatory conduct toward Villanueva and his speaking in support of her, and to punish him for same.

**ANSWER:**        Defendant denies.

21.    The individual Defendants STINNETT, BAUMBARTNER (sic.), RYAN and WRIGHT acted in concert and outside the scope of their employment by sharing among themselves information about Plaintiff's complaining of the Defendants' illegal conduct, and how to punish him for same; by discussing and strategizing (sic.) among themselves about how to stop Plaintiff's complaining about illegal conduct, and how to punish him for same; by jointly determining that Plaintiff's employment should be terminated as a means of stopping his complaining about illegal conduct and to punish him for same; and by terminating his employment as a means of stopping Plaintiffs' (sic.) complaining about illegal conduct, and to punish him for same.

**ANSWER:**        Defendant denies.

22.    The State of Illinois has a public policy that protects employees from retaliation by employers when employees speak against illegal conduct to their employers or to public officials such as the office of the Illinois Attorney General.

**ANSWER:**        Defendant denies.

23.    Defendants in carrying out all of the retaliatory acts alleged herein also refused to pay Plaintiff the bonuses to which he was entitled to pursuant to the agreements entered into by Plaintiff and Defendants.

**ANSWER:**        Defendant denies, except that it is without knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 23 with regard

8

to what the compensation arrangement existed for services Plaintiff was hired to perform with regard to establishing plaza site locations.

24.    Said refusal by Defendants to pay Plaintiff the bonuses to which he was entitled also constituted a discrete breach of the written and verbal agreements entered into by Plaintiff and Defendants, which bonuses amounted to more than $75,000 excluding interests and costs.

**ANSWER:**    Defendant denies and denies that it entered into any agreement with Plaintiff for services he performed to establish plaza site locations.

## FIRST CLAIM

25.    The Defendants violated 42 USC 1981 as Amended (sic.) by terminating Plaintiff's employment in retaliation for Plaintiff's having complained to them about the racial discrimination against Gloria Villanueva and having spoken to them in support of her allegations of racial discrimination, as alleged above.

**ANSWER:**    Defendant denies.

## SECOND CLAIM

26.    The Defendants STINNETT, BAUMGARTNER, RYAN and WRIGHT violated 42 USC 1985(3) by acting jointly and outside the scope of their employment to deprive Plaintiff of his. (sic.) right under 42 USC 1981 as Amended (sic.) to be free of retaliatory termination of his employment because he complained to them and others about the racial discrimination against Gloria Villanueva and spoke in support of her allegations of racial discrimination to Defendants and other of their supervisory personnel, as alleged above.

**ANSWER:**    No answer is required to this Paragraph, because it does not involve the Defendant, Village Discount Outlet, Inc.

## THIRD CLAIM

27.    Defendants violated the common law protection against retaliatory discharge as enunciated in Barr. Kelso-Burnett Co., 106 Ill. 2d 520, 529, 478 N.E.2de 1354 (1985). (sic.) and its progeny. (sic.) by terminating Plaintiff's employment because Plaintiff complained about Defendants' illegal conduct to Defendants, to other supervisory personnel in the Defendant's chains of command, and to the Office of the Attorney General, as alleged above.

ANSWER:    Defendant denies.

### FOURTH CLAIM

28.    Defendants STINNETT, BAUMGARTNER, RYAN and WRIGHT violated the Illinois common law prohibition against conspiracy by acting jointly, in concert and outside the scope of their employment to deprive Plaintiff of his right to be free of retaliatory termination of employment because he complained to Defendants, their supervisory personnel and to the Illinois Attorney General's office about the Defendants' illegal conduct, as alleged above.

ANSWER:    No answer is required to this Paragraph, because it does not involve the Defendant, Village Discount Outlet, Inc.

### FIFTH CLAIM

29.    Defendants breached their verbal and written agreements to pay Plaintiff bonuses exceeding $75,000 exclusive of interests and costs.

ANSWER:    Defendant denies.

30.    Defendants (sic.) actions as alleged herein directly proximately caused Plaintiff to suffer economic injury, emotional injury and mental injury, Accordingly, Plaintiff requests compensatory economic damages including back pay, pre-judgment interest, lost benefits, reinstatement or front-pay; emotional injury damages, mental injury damages; punitive damages; attorney fees; and costs.

**ANSWER:**        Defendant denies.

### AFFIRMATIVE DEFENSES

1.  Defendant, Village Discount Outlet, Inc., was not Plaintiff's employer for all times relevant to this action.

WHEREFORE, Defendant requests this Honorable Court to dismiss the entire Complaint and to grant other appropriate relief as the Court deems proper.


Respectfully submitted,

_____
        /s/ Mark Hansen
Mark Hansen, Attorney for Defendant

Anthony S. Graefe
Atty No. 6180876
Mark Hansen
Atty No.6195212
Graefe & Hansen, Ltd.
55 West Monroe
Suite 3550
Chicago, Illinois 60603
(312) 236-0177